UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**BRIAN SUCIU,**

    **Plaintiff,**

**v.**                                                                 **Case No: 5:26-cv-188-WWB-PRL**

**COMMISSIONER TAYLOR N.
HATCH, DR. LINDA ABELES, KIDS
CENTRAL, INC., BOARD
CHAIRMAN KEVIN MCDONALD,
CPS MANAGER ERICA MARCHAN,
CPS CASE WORKER TAMEKA
BOATWRIGHT, GUARDIAN AD
LITEM GAIL HAILE, and
SUPERVISOR JENNIFER HILL,**

    **Defendants.**

_____

**ORDER**

Plaintiff Brian Suciu, proceeding *pro se*, initiated this action in federal court against

Kids Central, Inc. and several individuals in connection with a child custody matter. (Doc.

1). Plaintiff seeks to proceed in forma pauperis. (Doc. 2). For the reasons explained below,

Plaintiff's Motion to Proceed in Forma Pauperis is taken under advisement, and in an

abundance of caution, Plaintiff will be permitted an opportunity to amend the complaint.

**I.    BACKGROUND**

On March 11, 2026, Plaintiff initiated this action by filing a "Complaint for

Declaratory Relief, Damages, and Injunctive Relief" ("Complaint") against Kids Central,

Inc., "a private contractor performing state child welfare services under [the] authority of [the

Florida Department of Children and Families]" ("DCF"); Kevin McDonald, the Board

Chairman of Kids Central, Inc.; Taylor Hatch, the Commissioner of the DCF; Dr. Linda

Abeles, "who conducted and submitted a psychological/medical evaluation used against Plaintiff"; Erica Marchan, a Child Protective Services ("CPS") manager "involved in the investigation"; Tameka Boatwright, a CPS case worker "assigned to Plaintiff's case"; Gail Haile, a guardian ad litem "assigned to the matter"; and Jennifer Hill, a supervisor "responsible for oversight of the CPS investigation" (collectively, the "Defendants"). (*See* Doc. 1 at p. 2). Simultaneously with the filing of the Complaint, Plaintiff filed a Motion to Proceed in Forma Pauperis. (Doc. 2).

As best can be discerned from the allegations in the Complaint, Plaintiff's claims arise out of his dissatisfaction with matters handled by Defendants in connection with a child custody matter involving Plaintiff's minor children. (*See* Doc. 1). Plaintiff avers that he is "the parent of minor children subject to an investigation by the Florida Department of Children and Families[,]" and "[d]uring the course of the investigation, Defendants created and relied upon false medical and psychological evaluations authored by Defendant Dr. Linda Abeles[,]" which "contained materially false statements and fabricated findings . . . [that] were used as justification for state intervention and court proceedings." (*See id.* at p. 3). Plaintiff claims that "Defendants knew or should have known that the information contained in the evaluation was false or misleading[,]" and "[d]espite this knowledge, Defendants relied on the falsified information to continue CPS intervention." (*See id.*). Plaintiff alleges that "[a]t no time were [his] children in immediate danger" and that "[t]he investigation and actions taken by Defendants were therefore unlawful and unconstitutional." (*See id.*).

Plaintiff asserts the following claims for relief: (1) "Civil Rights Violations" under 42 U.S.C. § 1983 (Count I); (2) "Fraud on the Court" (Count II); (3) "Conspiracy to Violate Civil Rights" (Count III); (4) "False Reporting and Fabrication of Evidence" (Count IV); and (5)

"Structural Conflict of Interest" (Count V). (*See id*. at pp. 4-5). Plaintiff requests injunctive relief, asking the Court to "[d]eclare Defendants' actions unconstitutional"; "[o]rder correction of all false records"; and "[e]njoin Defendants from further unlawful interference." (*See id*. at p. 5). Plaintiff also seeks compensatory damages and punitive damages. (*See id*.).

## II.    LEGAL STANDARDS

An individual may be allowed to proceed in forma pauperis if he declares in an affidavit that he is unable to pay such fees or give security therefor. *See* 28 U.S.C. § 1915(a)(1). However, before a plaintiff is permitted to proceed in forma pauperis, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See id.* § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the suit *sua sponte*. *Id*.

In evaluating a complaint under § 1915, courts must liberally construe *pro se* filings and hold them to less stringent standards than papers drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts cannot act as counsel for plaintiffs or rewrite pleadings. *See United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021). *Pro se* litigants must still comply with the procedural rules applicable to ordinary civil litigation. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

Nevertheless, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id*. (quoting *Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *See Twombly*, 550 U.S. at 555 (citations omitted). Although a court must accept as true well-pleaded allegations, it is not bound to accept a legal conclusion stated as a "factual allegation" in the complaint. *See id*.; *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations omitted).

Subject-matter jurisdiction is a threshold issue in any case pending in the United States District Court. Federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *See Univ. of So. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "[A] court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001); *see Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. *See Univ. of So. Ala.*, 168

F.3d at 410; *Fitzgerald*, 760 F.2d at 1251. If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. 12(h)(3); *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000) ("[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction.").

### III.   DISCUSSION

#### A.  Shotgun Pleading

As a threshold matter, Plaintiff's Complaint fails to comply with the pleading requirements set forth in Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 requires that, among other things, the complaint set forth "a short and plain statement of the claim" demonstrating an entitlement to relief. *See* Fed. R. Civ. P. 8(a)(2). Each allegation in the complaint must be "simple, concise, and direct." *See* Fed. R. Civ. P. 8(d)(1). Rule 10 requires that a party "state its claims . . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that each claim be stated in separate counts "[i]f doing so would promote clarity." *See* Fed. R. Civ. P. 10(b).

In this instance, Plaintiff's Complaint does not contain a short and plain statement of the claim showing that he is entitled to relief as required by Rule 8(a)(2), nor does it set forth each allegation in separate, numbered paragraphs as required by Rule 10(b). *See* Fed. R. Civ. P. 8(a)(2), 10(b). Although Plaintiff is proceeding *pro se*, he is "still required to conform to procedural rules, and the court is not required to rewrite a deficient pleading." *See Washington v. Dep't of Child. & Fams.*, 256 F. App'x 326, 327 (11th Cir. 2007) (per curiam) (citation omitted).

Given that Plaintiff's Complaint violates both Rules 8 and 10, it is an impermissible shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (defining a "shotgun pleading" as a pleading that "violate[s] either Rule 8(a)(2) or Rule 10(b), or both"). The Eleventh Circuit has identified four basic categories of shotgun pleadings: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to separate "each cause of action or claim for relief" into a different count; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See id.* at 1321-23. Each of these types of pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See id.* at 1323. The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). Indeed, shotgun pleadings "exact an intolerable toll on the trial court's docket," among other things. *See Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

Plaintiff's Complaint falls under the second and fourth categories of shotgun pleadings. First, Plaintiff's Complaint contains conclusory, vague, and immaterial facts not obviously connected to a particular count. Plaintiff does not properly delineate the pertinent facts that supposedly buttress each of the counts in the Complaint. *See Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (stating that a hallmark of a

shotgun pleading is that "it is virtually impossible to know which allegations of facts are intended to support which claim(s) for relief"). Second, Plaintiff's Complaint fails to connect four of the five causes of action with any particular defendant. For example, in Counts I, II, III, and V of the Complaint, Plaintiff improperly lumps all Defendants together and fails to identify which defendant is responsible for which acts or omissions. As a result, Plaintiff's Complaint makes it virtually impossible for the Court to discern what claims Plaintiff asserts against each defendant and what role, if any, each defendant played in the alleged violations. *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996). Because Plaintiff's Complaint constitutes an impermissible shotgun pleading, it fails to give the Defendants adequate notice of the claims asserted against them and the grounds upon which each claim rests. *See Weiland*, 792 F.3d at 1323.

### B. Subject Matter Jurisdiction

Next, and most importantly, it appears that the Court lacks subject matter jurisdiction over Plaintiff's claims. To the extent Plaintiff is asking the Court to intervene in any ongoing state court proceedings, the Court would abstain from doing so under the *Younger* abstention doctrine. *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-37 (1982) (explaining the application of the *Younger* abstention doctrine in the civil context).[1] "*Younger* and its progeny reflect the longstanding national public policy, based on principles of comity and federalism, of allowing state courts

---

[1] In general, "[t]he Supreme Court has recognized only three types of state proceedings where abstention is warranted: (1) criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' . . . judicial functions." *See Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 907-08 (11th Cir. 2023) (citation and internal quotation marks omitted). All of Plaintiff's claims appear to relate to civil state proceedings, with at least one count directly referencing Defendants' actions taken at the state level during court proceedings. (*See* Doc. 1 at pp. 3-4).

to try cases—already pending in state court—free from federal court interference." *Butler v. Ala. Judicial Inquiry Comm'n*, 245 F.3d 1257, 1261 (11th Cir. 2001) (citation omitted).

Under the *Younger* abstention doctrine, "federal courts ordinarily must refrain from deciding the merits of a case when (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the parties have an adequate opportunity to raise any constitutional claims in the state proceeding." *See Newsome v. Broward Cnty. Pub. Defenders*, 304 F. App'x 814, 816 (11th Cir. 2008) (per curiam) (citing *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (explaining that under the *Younger* abstention doctrine, federal courts will not interfere with certain state civil proceedings, including "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions") (citation omitted).

Upon consideration of these factors, the Court finds that abstention is warranted to the extent that any of the state court proceedings referenced in Plaintiff's Complaint remain active and pending. *See, e.g.*, *Narciso v. Walker*, 811 F. App'x 600, 601-03 (11th Cir. 2020) (per curiam) (citing *Younger* in affirming the dismissal of a plaintiff's federal court challenge to a child custody proceeding pending in state court); *Thomas v. Disanto*, 762 F. App'x 770, 773 n.4 (11th Cir. 2019) (per curiam) (agreeing with the district court's alternative holding that plaintiff's federal lawsuit over a child custody matter was barred by *Younger* to the extent that the proceedings were ongoing); *Liedel v. Juv. Ct. of Madison Cnty., Ala.*, 891 F.2d 1542, 1546 (11th Cir. 1990) (recognizing that "under *Younger* [abstention,] . . . federal district courts may not interfere with ongoing child custody proceedings").

First, while it is not entirely clear whether the state court proceedings are final, it is apparent that Plaintiff seeks federal court intervention in state court proceedings relating to a child custody matter. Specifically, in the Complaint, Plaintiff asks the Court to "[d]eclare Defendants' actions unconstitutional," "[o]rder correction of all false records" that "were used as justification for state intervention and court proceedings[,]" and "[e]njoin Defendants from further unlawful interference." (*See* Doc. 1 at pp. 3, 5); *see also Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997) (explaining that *Younger* abstention applies to injunctions and declaratory judgments that would effectively enjoin state court proceedings). Second, it is well-settled that matters involving child custody implicate important state interests. *See 31 Foster Child. v. Bush*, 329 F.3d 1255, 1275 (11th Cir. 2003); *Davis v. Self*, 547 F. App'x 927, 930 (11th Cir. 2013) (per curiam); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."). Finally, Plaintiff has not shown that he is procedurally prevented from raising his constitutional claims in the state court proceedings. *See Daniels v. Geraldi*, 578 F. App'x 811, 811 (11th Cir. 2014) (per curiam) (stating that an "[a]dequate opportunity to raise constitutional challenges exists so long as state procedural law does not bar the party from raising the constitutional claim") (citing *Old Republic Union Ins. Co.*, 124 F.3d at 1262); *31 Foster Child.*, 329 F.3d at 1279 (noting that a plaintiff has "the burden of establishing that the state proceedings do not provide an adequate remedy for their federal claims" and "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary'") (citations omitted); *see also Leonard*, 61 F.4th at 909 ("To demonstrate that claims are procedurally prevented in state tribunals, plaintiffs should provide evidence of state laws, rules, or procedures that would allow a district court to evaluate whether the plaintiff's federal

claims will effectively be shut out from the judicial system and cut off from effective review in the courts.").

Further, to the extent that the state court proceedings have concluded, this Court would still not be an available avenue to seek review because the *Rooker-Feldman* doctrine precludes federal courts (other than the United States Supreme Court) from reviewing and rejecting final state court judgments or orders. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) (explaining the *Rooker-Feldman* doctrine); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). "It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (per curiam) (citations omitted). This jurisdictional bar "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment" such that the federal court litigant is seeking to "effectively nullify" the state court judgment—directly or indirectly—or if it "succeeds only to the extent that the state court wrongly decided the issues." *See Incorvaia v. Incorvaia*, 154 F. App'x 127, 128 (11th Cir. 2005) (per curiam) (quoting *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001)); *Coreno v. One W. Bank FSB*, 617 F. App'x 928, 930 (11th Cir. 2015) (per curiam) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)); *see also Castro v. Lewis*, 777 F. App'x 401, 406 (11th Cir. 2019) (per curiam). Simply stated, "federal courts are not a forum for appealing state court decisions." *See Staley v. Ledbetter*, 837 F.2d 1016, 1018 (11th Cir. 1988) (per curiam). *Rooker-Feldman* has been applied to, among other types of cases, those concerning child custody matters. *See Fox v. Fla. Dep't of Child. & Fams.*, 828 F. App'x 639, 640 (11th Cir. 2020) (per curiam) (collecting cases).

Plaintiff's claims in this case appear to amount to an improper collateral attack on the state court proceedings involving the custody of his children. Exercising jurisdiction over this kind of collateral attack on the state court proceedings would require the Court to improperly interfere with ongoing proceedings or final judgments or orders entered by the state courts, which is exactly what the *Rooker-Feldman* doctrine is designed to protect against. *See, e.g.*, *Fox*, 828 F. App'x at 641-42 (affirming dismissal of complaint brought by mother alleging violations of her constitutional rights stemming from a termination of parental rights action based upon lack of subject matter jurisdiction under *Rooker-Feldman*); *Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021) (explaining that asking a federal court to "'review and reject' the state court's child custody judgment. . . . would be a violation of *Rooker-Feldman*"); *Thomas*, 762 F. App'x at 773 (affirming the district court's finding that the *Rooker-Feldman* doctrine was a jurisdictional bar to the review of a state court child custody matter to the extent the proceeding had concluded); *Goodman ex rel. Goodman*, 259 F.3d at 1333 (describing a federal action seeking "an injunction preventing enforcement of the state court judgment and returning custody to the aggrieved parent" as an "easy case for application of the *Rooker-Feldman* doctrine*").

Moreover, the proceedings involve issues of child custody, which fall under the domestic relations exception to federal jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006) ("[O]nly divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds.") (citation and internal quotation marks omitted); *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("We conclude, therefore, that the domestic relations exception, as articulated by this Court since [*Barber v. Barber*, 62 U.S. 582 (1858)] divests the federal courts of power to issue divorce, alimony, and child custody decrees."). As such,

"federal courts generally dismiss cases involving divorce and alimony, child custody, visitations rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." *See Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (per curiam) (citation omitted). Thus, to the extent Plaintiff seeks federal court intervention concerning child custody determinations related to his children, the domestic relations exception precludes this Court from exercising jurisdiction over such claims.

### C.  Amendment

In an abundance of caution, the Court will allow the Plaintiff an opportunity to file an amended complaint to clarify the basis of his claims and the jurisdiction over them. Plaintiff must provide the Court with sufficient information and in a coherent manner so that it can perform the review required under § 1915. The amended complaint must clearly state the legal theory or theories upon which Plaintiff seeks relief and explain with factual allegations how each defendant is responsible. Additionally, the amended complaint must clearly state the basis for the Court to exercise jurisdiction over Plaintiff's claims. Plaintiff should carefully consider whether he can allege a claim in good faith because pursuing frivolous claims could lead to the imposition of sanctions.

Plaintiff is cautioned that, despite proceeding *pro se*, he is required to comply with this Court's Local Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. Plaintiff may obtain a copy of the Local Rules from the Court's website (http://www.flmd.uscourts.gov) or by visiting the Office of the Clerk of Court. Additionally, resources and information related to proceeding in court without a lawyer, including a handbook entitled "Guide for Proceeding Without a Lawyer," can be located on the Court's

website (http://www.flmd.uscourts.gov/pro_se/default.htm). Plaintiff should also consult the Middle District of Florida's Civil Discovery Handbook for a general discussion of this District's discovery practices (http://www.flmd.uscourts.gov/civil-discovery-handbook).

## IV.   CONCLUSION

Accordingly, Plaintiff's Motion to Proceed in Forma Pauperis (Doc. 2) is **TAKEN UNDER ADVISEMENT**. Plaintiff shall file an amended complaint on or before **May 7, 2026**. The amended complaint must comply with all pleading requirements contained in Rules 8, 9, 10, and 11 of the Federal Rules of Civil Procedure and those contained in the Local Rules of the Middle District of Florida. Failure to comply with this Order may result in a recommendation that this action be dismissed for failure to prosecute.

**DONE** and **ORDERED** in Ocala, Florida on April 9, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties